UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

**PEGGY MOUSAW**,

        *Plaintiff*,

  -*vs*-

**BOARD OF EDUCATION of the COLTON PIERREPONT CENTRAL SCHOOL DISTRICT, STEPHEN KNIGHT, JEFFREY ANGLEBERGER, SHARON ANDREWS, SUSAN COLLINS, SHELLI PRESPARE-WESTON AND LAWRENCE PECK, Individually and in their capacity as School Board Members, MARTIN BREGG, Individually and as Superintendent of Schools, ANDREW SILVER, ESQ., Individually and in his capacity as Attorney for the Colton-Pierrepont Central School District, DAVID WHITE, Individually and in his capacity as Business Manager, District Treasurer and Investment Officer, and JEFF BRISTOL, Individually and in his capacity as Clerk of the Works, PUBLIC SECTOR H.R. Consultants, L.L.C. and RONNI TRAVERS, and R.P. TROUTMAN AND ASSOCIATES, INC., Individually, and in their capacity as Investigators for the Colton-Pierrepont Central School District,**

        *Defendants*.

DEFENDANT SILVER'S REPLY TO PLAINTIFF'S ADDITIONAL STATEMENTS OF MATERIAL FACT

Civil Action No. 7:07-cv-1006

(DNH/GJD)

---

Defendant, Andrew Silver, Esq. ("Silver"), by his attorneys, Hiscock & Barclay, LLP, as and for his Reply to the Additional Statements of Material Facts of the plaintiff, Peggy Mousaw ("Plaintiff"), states as follows:

**PRELIMINARY STATEMENT AND OBJECTION**

Northern District Local Rule 7.1(a)(3) requires a Statement of Material Facts accompany each motion for summary judgment and allows the non-moving party to set forth additional facts that the non-

movant contends are in dispute. Plaintiff has failed to comply with that rule as Plaintiff's "Additional Statement of Material Facts" contain conclusory allegations, argument and commentary that is inappropriate for a Statement of Material Facts under Local Rule 7.1(a)(3). Accordingly, it is respectfully contended that that Plaintiff's Additional Statement of Material Facts should be stricken from the record and not considered by the Court on the present motion. To the extent that a response is required, Silver has responded solely to the facts contained in Plaintiff's Additional Statement of Material Facts.

1. With respect to defendant's paragraph ten above, Defendant Bristol purportedly told Defendant Bregg about the alleged incident on February 16, 2006, which was one day after a board meeting in which Plaintiff directly questioned Defendant Bristol's lack of qualifications and poor job performance, Defendant Bristol could not remember what month or day the purported harassment occurred, and was told thereafter by Defendant Bregg to speak to Defendant White. [*See* Larkin Dec., Ex. K, pp. 136-138, 141-144].

**RESPONSE:** Silver, subject to the objection outlined above, admits that Bristol informed Bregg on February 16, 2006. Admits that the prior day Plaintiff had confronted Bristol at a Board Meeting. Admits that at the time of the initial meeting between Bristol and Bregg, Bristol did not remember the exact date.

2. While Defendant Bristol signed the complaint of purported sexual harassment by Plaintiff on February 17, 2006, it was Defendant White who filled out the complaint with the exception of one correction by Defendant Bristol, where he specifically noted the alleged incident occurred in the "a.m.". [*See* Silver Dec., Ex. A].

**RESPONSE:** Silver, subject to the objection outlined above, admits that White was the District's Sexual Harassment Officer and had been trained at the District that the Sexual Harassment Officer should physically write down the complaint based on the oral statements of the accuser and did so in this case. *See* Larkin Dec., Exhibit "K," p. 159, ln. 21 – p. 160, ln. 7. Admits that Bristol added "a.m."

3.      The complaint itself was otherwise completely written and filed by Defendant White as the school district's purported sexual harassment complaint officer/business manager.  [*See* Silver Dec., Ex. A].

**RESPONSE:**           Silver, subject to the objection outlined above, admits the statement.

4.      With respect to defendant's paragraph eleven above, Bristol's complaint alleges Plaintiff came to his construction trailer on the morning of October 27, 2005, and purportedly harassed him. [Silver Dec., Ex. A]. However, after being made aware of Plaintiff's of documentation of her whereabouts on the morning of October 27, 2005, Defendant Bristol's testified at Plaintiff's removal hearing that he could no longer remembered when the alleged incident occurred. [*See* O'Sullivan Dec., Ex. B, pp. 209-211].

**RESPONSE:** Silver, subject to the objection outlined above, admits that Bristol's Complaint alleges that Plaintiff came to the construction trailer on the morning of October 27, 2005.  Admits that at the hearing Bristol could no longer recall whether it was the morning or the afternoon of October 27, 2005.

5.      As Defendant Silver is also acutely aware, it is undisputed someone accessed Defendant Bristol's personal construction log on or after February 17, 2006, relative to the October 27, 2005, log entry, using Bristol's computer password to access the computer in his locked trailer, editing that log for at least thirteen minutes and thereby saving numerous changes and, coincidentally, on or about the same date Defendant Bristol filed his alleged sexual harassment claim with the District. Therefore, defendant's paragraph eleven above misconstrues the evidence and ignores common sense wherein it asserts as a matter of fact "Plaintiff's presence at Bristol's trailer to review documents pursuant to her FOIL request is noted in the daily construction log." [*See* Larkin Dec., Ex. I, pp. 82-9 1; *see* O'Sullivan Dec., Ex. B., pp. 214-218].

**RESPONSE:** Silver, subject to the objection outlined above, admits that the log was accessed by someone after October 27, 2005.  Denies that Paragraph 11 of Silver's Statement of Material Facts misconstrues the evidence or ignores common sense.  Paragraph 11 states that the Log showed that Plaintiff was in Bristol's trailer on October 27, 2005 to review the construction log, which it does.  *See* Larkin Dec., Exhibit "M."

6.      Plaintiff was never present at Bristol's trailer on October 27, 2005, and as Defendant Silver is keenly aware, Plaintiff was at work early that morning, she actually met with Defendant Silver for part

of that morning for almost an hour, discussed with him a zoning issue concerning her home, after which she finished her work day for the County, and then went home around noon to meet a surveyor in preparation for her zoning board meeting that evening. [*See* Larkin Dec., Ex. F, pp. 135-141; Ex. I, pp. 141-149].

**RESPONSE:** Silver, subject to the objection outlined above, admits that Plaintiff alleges she was not present at Bristol's trailer. Denies that Silver is aware that Plaintiff was never at Bristol's trailer; Silver testified that he may have met with Plaintiff on the morning of October 27, 2005, but that even if it occurred on that date, he does not believe it makes it any less likely that she was also at Bristol's construction trailer on that morning. *See* Larkin Dec., Exhibit "I," p. 149, ll. 5 - 15. Plaintiff, however, testified that she is not claiming that Silver knew that Bristol's claim was false because she met with Silver on the morning of October 27, 2005. *See* Larkin Dec., Exhibit "F", p. 146, ln. 22 – p. 147, ln. 4.

7.   Finally, Plaintiffs have now forever lost the opportunity to properly show the extent of Defendant Bristol's fabrication because Defendants, while fully aware that Defendant Bristol's computer was a central focus of both the underlying harassment complaint and removal hearing, as well as the litigation between these two parties, for over three years, inexplicably and without any reasoning "trashed" Defendant Bristol's computer. While plaintiff will certainly be seeking recourse for Defendants spoliation, Defendants actions should be construed against them for purposes of this motion. [*See* Attorney's Affirmation of Stephen Ciotoli, sworn to January 22, 2009 ("Ciotoli Aff."), Ex. C].

**RESPONSE:** It appears Plaintiff has mistakenly cited, Ex. "C" of the Ciotoli Aff., when Exhibit "E," addresses the computer. Silver, subject to the objection outlined above, admits that the computer was destroyed. Denies that Plaintiff lost her opportunity to prove Bristol's alleged fabrication because the computer would not have proven the absence of Plaintiff in Bristol's trailer on October 27, 2005. Further, this is not a proper statement for a statement of facts and is instead a legal argument regarding spoliation. It should be noted that Plaintiff has not cross-moved against any Defendant in this matter, based on spoliation or any other grounds.

8.  With respect to defendant's paragraph thirteen, above and as far as Defendant Bristol's purported sexual harassment complaint is concerned, to the extent the complaint was filed on February 17, 2006, for a purported incident that occurred on October 27, 2005, the characterization that the District defendants informed Plaintiff "shortly" after the complaint was made is a material misstatement. The "existence" of the complaint, without any information whatsoever, was not revealed to Plaintiff until March 6, 2006, long after the complaint was lodged, after Ms. Travers was hired, after Ms. Travers had already begun conducting her "investigation," and after Ms. Travers had decided to require Plaintiff to submit to an interview. [*See* Silver Dec., Exs. A, B; *see* Larkin Dec., Exs. F, pp. 150-162, K, pp. 170-171; *see* O'Sullivan Dec., Ex. C-2, pp. 149-150, 152-153].

**RESPONSE:** Silver, subject to the objection outlined above, denies that the use of the term "shortly" is a material misstatement. Plaintiff was informed on March 6, 2006, twelve business days after Bristol lodged his complaint, that the complaint had been made, that Travers had been hired and that Travers was conducting an investigation. *See* Silver Dec, ¶ 20; Exhibit "B;" *see also* Larkin Dec., Exhibit "F," p. 150, ll. 16 – 18; Exhibit "B." Silver cannot admit or deny whether Travers had decided to "require" Plaintiff to submit to an interview as that information is the exclusive knowledge of Travers.

9.  Silver misconstrues Plaintiff's testimony. Plaintiff testified she had no idea who could have lodged the sexual harassment complaint against her, that the only people she could imagine would be Defendants White or Angleberger, and that "Mr. Bristol was not even on the horizon." [*See* Silver Dec., Exs. A, B; *see* Larkin Dec., Ex. F, pp. 150-162].

**RESPONSE:** Silver, subject to the objection outlined above, denies that Plaintiff's testimony has been misconstrued. Plaintiff testified "I honestly though initially when I got the complaint that it was either Angleberger or Dave White, and Bristol wasn't even on the horizon." *See* Larkin Dec., Exhibit "F," p. 156, ll. 10 – 13. Plaintiff later testified that White had told her that she was harassing him. *See* Larkin Dec., Exhibit "F," p. 157, ll. 8 – 15. Paragraph 13 of Silver's Statement of Material Facts states that Plaintiff did not believe that the claim had been made by Bristol and that she thought that it may have been White, which is substantially the same as her testimony.

10. As for defendant's attempts to construe Plaintiffs FOIL requests as some type of retaliation against Defendant Bristol, for a complaint she had no idea he had made, her FOIL requests for Bristol's personnel file were in response to a verbal altercation between Defendant Bristol and Plaintiff that took place, coincidentally, on February 7, 2006, a little more than a week before Bristol filed his sexual harassment complaint. [*See* Larkin Dec., Exs. F, pp. 59-67, K, pp. 156-157].

**RESPONSE:** Silver, subject to the objection outlined above, denies that Plaintiff had no idea a complaint had been made on the date of the FOIL requests. She was informed on March 6, 2006 of the Complaint by electronic mail and the FOIL requests are dated March 8, 2006. *See* Larkin Dec., Exhibit "F," p. 150, ll. 16 – 18; Exhibit "N." Admits that Plaintiff claims the requests were in response to an altercation with Bristol on February 7, 2006.

11. Plaintiff demanded that Defendant Bregg do something about Defendant Bristol's abusive, vulgar, and condescending language directed at Plaintiff in the school and in front of a teacher, to which Bregg said he would "take care of it." Plaintiff requested Bristol's personnel file to find out if Bregg had indeed "taken care of it" and whether he reprimanded Defendant Bristol for his inappropriate conduct, which we now know he did not. [*See* Larkin Dec., Exs. F, pp. 59-67, 153-161, K, pp. 156-157].

**RESPONSE:** Silver, subject to the objection outlined above, admits that Plaintiff went to Bregg on February 7, 2006 and that Plaintiff alleges that Bregg told her he would "take care of it." Admits that Plaintiff claims that she requested Bristol's personnel file to confirm whether Bregg had responded to her request.

12. Insofar as Plaintiff made a request of Defendant Bregg on March 15, 2006 to bring Defendant Bristol's personnel file to the next board meeting, it was an additional attempt to determine if Defendant Bregg had followed up as promised on the issue of Bristol's hostile, demeaning, vulgar, and inappropriate language he directed at Plaintiff on February 7, 2006. [*See* Larkin Dec., Exs. F, pp. 59-67, 153-16 1, K, pp. 156-157; *see also* Plaintiff's Additional Statements of Material Fact, supra at ¶¶ 9-11].

**RESPONSE:** Silver, subject to the objection outlined above, admits that Plaintiff alleges her request that Bregg bring Bristol's personnel file to the next Board meeting was a further attempt to confirm whether Bregg had responded to her prior request that Bristol would be reprimanded.

13. With respect to defendant's paragraph nineteen above, while the cited documents produced do not affirmatively indicate a meeting specifically with Silver on the morning of October 27, 2005, the fact that Silver does not dispute the impromptu meeting to discuss Plaintiff's zoning issues took place at his offices on that morning means Defendant Silver misconstrues the evidence when he states Plaintiff "now claims." [*See* Larkin Dec., Exs. F, pp. 141-149, G, pp. 135-141].

**RESPONSE:** Silver, subject to the objection outlined above, denies that stating Plaintiff now claims that she met with Silver on October 27, 2005 misconstrues the evidence. It is uncontested that Plaintiff's counsel, Marcia LeMay, did not make this claim in her April 4, 2006 letter to Silver, which explained Plaintiff's whereabouts on October 27, 2005. *See* Silver Dec., Exhibit "E;" *see also* Larkin Dec., Exhibit "F," p. 165, ln. 12 – p. 166, ln. 12.

14. Even though Silver purportedly does not recall the date of the meeting, he clearly does recall nearly every other detail of the meeting, what was discussed, where it took place, the fact that Plaintiffs zoning board meeting was imminent (potentially that evening), and the fact that the meeting could have taken place on October 27, 2005, making Plaintiffs assertion uncontested as opposed to a mere "claim." It is undisputed that Plaintiff's zoning board meeting did take place on the evening of October 27, 2005. [*See* Larkin Dec., Exs. F, pp. 135-141, I, pp. 145-146].

**RESPONSE:** Silver, subject to the objection outlined above, admits that Silver does not recall the date of the meeting. Admits that Silver recalls that the meeting was about Plaintiff's zoning issues and that it took place at his office. Admits that Plaintiff testified the meeting was on October 27, 2005. Admits that Plaintiff's assertion that the meeting took place on October 27, 2005 is uncontested.

15. With respect to defendant's paragraph twenty-one above, based on the totality of the undisputed evidence (rather than the single isolated fact that Plaintiff met with Defendant Silver on the morning of October 27, 2005), which includes but is not limited to Plaintiffs meeting with Silver, Bristol's tampering and/or fabrications of log entries around the same day he submitted his complaint of alleged harassment, the many failings of Travers' purported investigation and report, and the illegality and unreliability of the VSA tests in New York, Silver must have known or should have known that Bristol's claims were utterly false. Further, Silver's arguments and statements demonstrate at best a deliberate indifference or conscious disregard for the obviousness of the false accusations and bold assertions where, as he now claims, he was "unaware" of the utter falsity of Bristol's purported allegations. [*See* Larkin Dec., Ex. I., pp. 82- 91, 102-127, 139-146; *see* O'Sullivan Dec., Ex. B., pp. 214-218, 247-249].

**RESPONSE:** Silver, subject to the objection outlined above, denies that Silver must have known or should have known that Bristol's claims were false. Plaintiff, herself, testified that she does not claim that Silver knew that Bristol's claim was false because she met with Silver on the morning of October 27, 2005. *See* Larkin Dec., Exhibit "F", p. 146, ln. 22 – p. 147, ln. 4. Denies that Silver's statements demonstrate a deliberate indifference to the alleged obviousness that Bristol's statements were false. It is uncontested that the investigation was conducted by Travers, that Silver did not actively participate in the investigation and Silver never make any recommendations as to whether he believed that Britol's claim was true or false or how the Board should proceed. *See* Silver Dec., ¶¶ 19, 36, 49.

16. With respect to defendant's paragraph twenty-two above, all of Defendant Silver's communications and interactions with Travers and Defendants Bregg and Bristol indicate Defendant Silver was actively involved in prosecuting and investigating the spurious allegations lodged against Plaintiff, in spite of his protestations after the fact that he "was just the messenger." Obvious examples and proof of Defendant Silver's involvement in conducting the investigation, besides the totality of all the Defendants' deposition testimonies supporting the same, are Bregg's testimony that he called Silver almost immediately after Bristol told him abut the sexual harassment allegation, statements in letters made by Defendant Silver to Plaintiff's prior counsel, his role in procuring an illegal lie detector test for Defendant Bristol, and his attempts to coerce Plaintiff into taking an illegal lie detector test to "clear her name," all in violation of New York State law. [*See* Silver Dec., Ex. D, "We look forward to your client's response and I am happy to address any questions or concerns you may have," Ex. I, "The information you submitted as evidence that your client could not possibly have been on District property on the date in question, does not in my estimation, prove that that is the case," and Ex. N (where Silver states Plaintiffs refusal to take an illegal lie detector test will be construed negatively against her in the school board's decision as to whether pursue Bristol's claim of sexual harassment)].

**RESPONSE:** Silver, subject to the objection outlined above, denies that Silver was actively involved in the investigation. Silver did not recommend and was not involved in the retention of Travers to investigate the complaint. *See* Silver Dec., ¶ 19; *see also* Larkin Dec., Exhibit "I," p. 71, ln. 14 – p. 72, ln. 8; Exhibit "K," p. 164, ln. 19 – p. 165, ln. 20. It was determined that Silver would present Travers's questions to Plaintiff's counsel. *See* Silver Dec., ¶ 26. Admits that Silver investigated a lie detector test

for Bristol to take and put Bregg in contact with Troutman. *See* Larkin Dec., Exhibit "I," p. 101, l. 15 – p. 105, ln. 19. Denies that Silver's letters to LeMay are an attempt to coerce Plaintiff to take a lie detector test. Denies that Silver Dec., Exhibit "N" states anything other than is contained in what the Exhibit itself.

17. Moreover, Defendant Bristol testified in the prior removal hearing that "early on in the investigation," he had spoken to Defendant Silver about the sexual harassment claims at least three or four times regarding those claims and the progress of the investigation. [*See* O'Sullivan Dec., Ex. B, p. 247, ln. 1-17].

**RESPONSE:** Silver, subject to the objection outlined above, admits that Bristol testified at his removal hearing that he spoke with Silver three or four times.

18. With respect to defendant's paragraph twenty-four above, he misconstrues the material import of the evidence. Defendant Silver was the person who contacted the Sheriff's Department and Troutman & Associates looking for a lie detector test on behalf of the District and was therefore intimately involved in the "hiring" process. Also, Plaintiff has no personal knowledge of Silver's contact with the Sheriffs Department and there is nothing in the record from the Sheriff's Department on this contact. [*See* Defendant Silver's Material Statement of Fact, *supra* at ¶ 23].

**RESPONSE:** Silver, subject to the objection outlined above, admits that Plaintiff has no personal knowledge of Silver's contact with the Sheriff's Department. Admits that Silver contracted the Sheriff's Department and made the initial contact with Troutman & Associates. Denies that paragraph 24 of Silver's Statement of Material Facts misconstrues the material import of the evidence. It is uncontested that Troutman was retained by the District and a VSA was conducted on Bristol on May 31, 2006. *See* Silver Dec., ¶ 33; Exhibit "M."

19. Further, a well known legal principle of the law holds that ignorance of the law is no excuse and Defendant Silver plainly admitted in his deposition testimony that he subsequently realized at Plaintiff's removal hearing that the VSA lie detector test was illegal and unreliable in New York State under the facts of this case. Regardless, Silver allowed Travers to use the test results in her report to the Board anyway and subsequently admitted that "If I had to do it all over again would I -- would I conduct

the V. - have the VSA conducted? The answer is no. I would have chosen a different route. . .Twenty-twenty hindsight, would have done it a different way." [*See* Larkin Dec., Ex. I, pp. 118-120].

**RESPONSE:** Silver, subject to the objection outlined above, denies that Silver admitted that he realized that the VSA lie detector was illegal and unreliable in New York State. *See* Larkin Dec., Exhibit "I," p. 115, ll. 8 – 19. Denies that Silver "allowed Travers to use the test results in her report to the Board." Bregg testified that he provided the report to Travers and that it was not a factor in her report due to the lateness that she received it. *See* Larkin Dec., Exhibit "K," p. 223, ln. 21 – p. 224, ln. 19. Admits that Silver testified he would not have explored the use of a VSA on the Board's behalf if the situation arose again.

20. Moreover, defendant's reliance on an unreliable and illegal VSA lie detector test under the facts of this case and in this motion should not be condoned by this court as Defendant Silver now offers it as "proof" in support of his motion for summary judgment. Defendant Silver's plain and unequivocal admission as noted in the prior paragraph's citation, coupled with his irrelevant "legal" justification as prepared for and testified to during his deposition, simply supports the clear and simple fact that he "did not know that the section of Labor Law that deals with digital voice stress analyzer tests existed ... ," that he "wasn't even aware the statute existed, until August of 2006," and that use of the VSA in this case constituted a misdemeanor criminal violation under New York law. [*See* Larkin Dec., Ex. I, pp. 110-117; compare Defendant Silver's Statement of Material Fact, *supra* at ¶ 25-26].

**RESPONSE:** Silver, subject to the objection outlined above, denies that the VSA is offered as proof of Bristol's truthfulness. The VSA is offered for completeness of the record and to show the information that Silver possessed at the time he was accused of making a defamatory statement regarding Plaintiff. Denies that Silver made any admission in the cite given by Plaintiff in paragraph 19, other than that he would not explore use of a VSA again if he was in a similar circumstance.

21. With respect to defendant's paragraph twenty-eight above, there is absolutely no evidence that "Travers informed Bregg" of any such notion that she did not rely on the VSA results as a factor in her obviously flawed investigation. Despite Travers' belated and vigorous attempts to minimize the glaring inadequacies of her "investigative" report, her attempt to exculpate herself at the removal hearing was both self-serving and unbelievable on the face of the documentary evidence. Travers clearly relied on

the illegal VSA lie detector test "that no deception was indicated when Jeff [Bristol] responded to specific questions regarding his allegations." [*See* Larkin Dec., Ex. K, pp. 224-226; see Silver Dec., Ex. O, p. 4].

**RESPONSE:** Silver, subject to the objection outlined above, denies that there is no evidence that Travers informed Bregg that she did not rely on the VSA results. Bregg's testimony is evidence that Travers informed Bregg of that fact. *See* Larkin Dec., Exhibit "K," p. 223, ln. 21 – p. 224, ln. 19. The statements regarding Travers are not statements of fact appropriate for a Statement of Material Facts and are unsupported by an evidence or testimony. Denies that the statement quoted from Travers report unequivocally demonstrates that Travers relied on the VSA results in reaching her conclusions and recommendations.

22. With respect to defendant's paragraph twenty-nine above, all of the Board members were provided copies of Travers report prior to the July 11, 2006 executive session of the board meeting with the sole exception of Plaintiff, who was specifically denied a copy by Defendants Silver and Bregg. As such, Travers' report itself was never presented to the "Board" in its entirety, it was provided to all the Defendants individually while denied to Plaintiff, a Board member. [*See* Larkin Dec., Ex. F, pp. 185-189, 191-195].

**RESPONSE:** Silver, subject to the objection outlined above, admits that Plaintiff claims that she was not provided a copy of the Travers's report prior to the July 11, 2006 executive session.

23. Furthermore, Travers only "skimmed" or "reviewed" certain portions of the report, highlighting the most outlandish and salacious details, while answering other Board members' questions. [*See* Larkin Dec., Ex. F, pp. 190].

**RESPONSE:** Silver, subject to the objection outlined above, admits that Plaintiff testified that Travers did not present the full report.

24. With respect to defendant's paragraph thirty above, the Board directed Silver and voted on drafting formal charges to conduct a removal hearing all in open session, thereby informing the public openly that formal charges to remove a board member for alleged sexual harassment would be voted on at the next board meeting on July 25, 2006. [*See* Larkin Dec., Ex. F, pp. 192-197].

**RESPONSE:**  Silver, subject to the objection outlined above, admits that the decision to have formal charges drafted was made by the Board in public session on July 11, 2006 after the discussion of Travers's report in executive session.

25.   With respect to defendant's paragraph thirty-one above, Silver never informed Plaintiff that he was going to read the graphic, scurrilous, and scandalous accusations to the public at large during the July 25, 2006 Board meeting and, in fact, had previously told plaintiff's prior attorney's that they "really didn't need to be there" because the school board wasn't "really going to go through with this," with "this" meaning the disciplinary charges.  [*See* Larkin Dec., Ex. F, p. 198].

**RESPONSE:**  Silver, subject to the objection outlined above, denies.  The record clearly demonstrates that Plaintiff's counsel was informed that the charges were going to presented at the July 25, 2006 Board Meeting.  *See* Silver Dec., Exhibit "U."  The statements quoted in paragraph 25 are recollections that Plaintiff had of information provided to her by her counsel, Marcia LeMay.  *See* Larkin Dec., Exhibit "F," p. 198, ll. 4 – 9.  Plaintiff has offered no independent evidence that Silver made those statements to LeMay and those statements are directly contradictory to Silver's letter to Plaintiff's counsel on July 12, 2006, which stated, in no uncertain terms, that the charges would be drafted and considered at the July 25, 2006 Board Meeting.  *See* Silver Dec., Exhibit "U;" *see also* Larkin Dec., Exhibit "I," p. 220, ln. 4 – p. 222, ln. 20.

26.   Moreover, Defendant Silver then proceeded to state to the public audience in attendance, saying in sum and substance, "Ms. Mousaw was advised to have her attorney's here, and her attorneys chose not to be here tonight to represent her." and "We're going to move forward on these charges. I'm advising Ms. Mousaw that she shouldn't speak at this meeting." The clear import of Silver's attempt at "informing" Plaintiff that she was not to speak was to convey to the public at large: 1) that even Plaintiff's own attorneys decided not to defend her against the Board's charges by their failure to appear after purportedly being advised to do so; and 2) Plaintiff is being advised of her right to remain silent, similar to a criminal defendant who has just been arrested for a crime.  [*See* Larkin Dec., Ex. F, pp. 202-203].

**RESPONSE:**  Silver, subject to the objection outlined above, admits that Silver instructed Plaintiff that she was not obligated to make a statement at the July 25, 2006 Board meeting and that she was not

represented by counsel at that meeting, although she did have an attorney. *See* Larkin Dec., Exhibit "I," p. 222, ln. 24 – p. 223, ln. 18. Silver, subject to the objection outlined above, denies that those statements carried any indication that there was any truth to the charges. *See* Larkin Dec., Exhibit "I," p. 223, ln. 21 – p. 224, ln. 2.

27. With respect to defendant's paragraph thirty-three above, Defendant Silver's cited sources only confirmed that when the Board of Education was to vote on disciplinary charges, the vote, and <u>ONLY THE VOTE</u> on those charges had to be public while the rest of the disciplinary charges and hearing was supposed to remain in executive session and private, unless and until the Plaintiff made an affirmative request to open her hearing to the public, which was never done in this case. [*See* Silver Dec., ¶¶ 52 -59; *see* Larkin Dec., Ex. I, pp. 202-206; *see* Ciotoli Aff., ¶ 6].

**RESPONSE:** Silver, subject to the objection outlined above, denies that the sources consulted by Silver only confirmed that the vote had to be in public session. Silver's reading of the *Weisenberg* decision and conversations with Edward Sarzynski, Esq. created his belief that the hearing would need to be done in public, which he interpreted to necessarily include the presentation of the charges and the voting on whether to proceed. *See* Larkin Dec., Exhibit "I," p. 203, ln. 14 – p. 204, ln. 25. Further, his reading of Public Officer's Law section 105 was that, while that section does not specifically say charges had to be read publicly, it does provide a limited list where executive session can be used, which did not include this circumstance. *See* Larkin Dec., Exhibit "I," p. 205, ll. 9 – 16. Finally, section 105 requires that all votes requiring the expenditure of public funds must be in open session. *See* Larkin Dec., Exhibit "I," p. 205, ln. 19 – p. 206, ln. 17. The consideration of those sources, as a whole, led Silver to determine that the charges must be presented to the Board for a vote in public session. *See* Silver Dec., ¶¶ 52 -59.

28. With respect to defendant's paragraph thirty-five above, Defendant Silver's action of purportedly "informing Plaintiff she was not required to speak" is twisting the actual events. After illegally reading the alleged sexual harassment charges and the scurrilous details contained therein, Plaintiff stood up and attempted to address the public and the board of education regarding the charges that had just been read. [*See* Larkin Dec., Ex. F, pp. 201-202].

**RESPONSE:**  Silver, subject to the objection outlined above, denies that the statement in paragraph 35 of Silver's Statement of Material Facts "twist[ed] the actual events."  Silver testified that he informed Plaintiff that she was required to speak and that Silver informed her she was not required to address the charges at that time and that Plaintiff did anyway.  *See* Larkin Dec., Exhibit "I," p. 222, ln. 24 – p. 224, ln. 6.

| | |
|---|---|
| **DATED**:   February 5, 2010 | **HISCOCK & BARCLAY, LLP** |
| | By: <u>s/ Matthew J. Larkin</u><br>     Matthew J. Larkin<br>     Bar Roll No. 514240 |
| | *Attorneys for Defendant*<br>Andrew Silver, Esq.<br>Office and Post Office Address<br>One Park Place<br>300 South State Street<br>Syracuse, New York 13202-2078<br>Telephone (315) 425-2805<br>Facsimile (315) 703-6247<br>mlarkin@hblaw.com |

## CERTIFICATE OF SERVICE

    I hereby certify that on February 5, 2010, I filed a copy of the foregoing Reply to Plaintiff's Additional Statements of Material Fact with the Clerk of the Court via the CM/ECF system which gave notice to the following attorney for the plaintiff:

        Stephen Ciotoli, Esq.
        *Attorneys for Plaintiff*
        Office and Post Office Address
        7202 East Genesee Street
        Fayetteville, New York 13066
        Telephone: (315) 451-3810

And the following attorney's for defendants:

        Jill E. O'Sullivan, Esq.
        FitzGerald, Morris Law Firm
        *Attorneys for Jeffrey Bristol*
        One Broad Street Plaza
        Glens Falls, NY 12801
        518-745-1400
        Fax: 518-745-1576
        Email: jeo@fmbf-law.com

        Claudia A. Ryan, Esq.
        Towne, Ryan & Partners, PC
        *Attorneys for Board of Education of the Colton-Pierrepont Central School District, Stephen Knight, Jeffrey Angleberger, Sharon Andrews, Susan Collins, Shelli Prespare-Weston, Lawrence Peck, Martin Bregg and David White*
        450 New Karner Road
        PO Box 15072
        Albany, New York 12205
        Telephone #:  (518) 452-1800
        Fax #:  (518) 452-6435
         E-Mail:  claudia.ryan@townelaw.com

                      s/ Matthew J. Skiff
                        Matthew J. Skiff
                        Bar Roll No. 514607