UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
PEGGY MOUSAW,

                                    Plaintiff,

          -v-                                        7:07-CV-1006

BOARD OF EDUCATION OF COLTON
PIERRREPONT CENTRAL SCHOOL
DISTRICT; STEPHEN KNIGHT,
Individually and in his capacity as School
Board Member; JEFFREY ANGLEBERGER,
Individually and in his capacity as School
Board Member; SHARON ANDREWS,
Individually and in her capacity as School
Board Member; SUSAN COLLINS, Individually
and in her capacity as School Board Member;
SHELLI PRESPARE-WESTON, Individually
and in her capacity as School Board Member;
LAWRENCE PECK, Individually and in his
capacity as School Board Member; MARTIN
BREGG, Individually and as  Superintendent
of Schools; ANDREW SILVER, ESQ., Individually
and in his capacity as Attorney for the Colton-
Pierrepont Central School District; DAVID WHITE,
Individually and in his capacity as Business Manager,
District Treasurer and Investment Officer; and
JEFFREY BRISTOL, Individually and in his capacity
as Clerk of the Works;

                                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
APPEARANCES:                         OF COUNSEL:

O'HARA, O'CONNELL & CIOTOLI          STEPHEN CIOTOLI, ESQ.
Attorneys for Plaintiff              DOMINIC D'IMPERIO, ESQ.
7207 East Genesee Street
Fayetteville, NY 13066

TOWNE, RYAN & PARTNERS, P.C.         JOHN F. MOORE, ESQ.
Attorneys for School Board Defendants CLAUDIA A. RYAN, ESQ.
450 New Karner Road
P.O. Box 15072
Albany, NY 12205

HISCOCK & BARCLAY, LLP                    MATTHEW J. LARKIN, ESQ.
Attorneys for Defendant Silver            MATTHEW J. SKIFF, ESQ.
One Park Place
300 South State Street
Syracuse, NY 13202-2078

FITZGERALD MORRIS BAKER FIRTH P.C.        JILL E. O'SULLIVAN, ESQ.
Attorneys for Defendant Bristol
16 Pearl  Street
P.O. Box 2017
Glens Falls, NY 12801

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

Plaintiff Peggy Mousaw ("plaintiff" or "Mousaw") filed the complaint in this action on September 24, 2007.  She filed an amended complaint on March 31, 2008.

Plaintiff's First Cause of Action alleges that all defendants violated her First Amendment right to free speech.  Her Second Cause of Action alleges that all defendants retaliated against her for her speech on matters of public concern.  Her Third Cause of Action, against school board members Stephen Knight ("Knight"), Jeffrey Angleberger ("Angleberger"), Sharon Andrews ("Andrews"), Susan Collins ("Collins"), Shelli Prespare-Weston ("Prespare-Weston"), and Lawrence Peck ("Peck"); school superintendent Martin Bregg ("Superintendent Bregg"); school business manager and treasurer David White ("White") (collectively "school defendants"); clerk of the works Jeffrey Bristol ("Bristol"); and school board attorney Andrew Silver, Esq. ("Attorney Silver"), alleges defamation, libel, and slander pertaining to Bristol's sexual harassment charges against Mousaw.  Her Fourth Cause of Action alleges defamation, libel, and slander by Bristol related to his accusations

that plaintiff was a prostitute.  Her Fifth Cause of Action alleges that White libeled and

slandered her when he accused her, at an open board meeting, of "stealing" the school

district's insurance binder.  Finally, plaintiff's Sixth Cause of Action, against Bristol, alleges

libel and slander related to his accusing plaintiff of breaking and entering a school

construction trailer.

Defendants Board of Education of Colton Pierrepont Central School District (the

"Board"), Knight, Angleberger, Andrews, Collins, Prespare-Weston, Peck, Bregg, and White

moved for summary judgment.  Defendants Silver and Bristol each separately moved for

summary judgment.  Plaintiff opposed all motions.[1]  Oral argument was heard on February

19, 2010.  Decision was reserved.

## II.  BACKGROUND

The following facts are undisputed unless otherwise noted.

Mousaw was employed by St. Lawrence County as Deputy Budget Officer

beginning in 2001.  She was eventually terminated from that position, according to her, as a

result of defendants' conduct as outlined below.

Mousaw was elected to the Board in May 2003, to serve a term as one of its

members from July 30, 2003, to June 30, 2007.  In the spring of 2003 the Board approved a

capital construction project over Mousaw's objections.  She continued to question the project,

sought information through New York State's Freedom of Information Law ("FOIL") when her

attempts to obtain it through the Board failed, and publicly criticized the project.  She was

---

[1]  In addition, Mousaw contends that the school defendants should be sanctioned for spoliation of
Bristol's computer.  However, spoliation of Bristol's computer is not material to the claims in this case.
Therefore, plaintiff's contention need not be addressed.

very vocal and outspoken throughout her tenure on the Board regarding various issues, most notably the capital construction project.

In the spring of 2005 the School hired Bristol as clerk of the works of the capital construction project.  In February 2006 Bristol made a formal complaint to the School District alleging that on October 27, 2005, plaintiff had sexually harassed him.  The sexual harassment complaint Bristol made alleges that Mousaw grabbed his crotch and held on while stating that "this is what I want."  According to the harassment complaint, plaintiff then went into another room to review some documents.  A few minutes later Mousaw turned to the door to leave, and, while looking at Bristol's crotch, said "Before this is over, I'll have those on a grill."  According to Bristol's complaint, he made the formal complaint, months after the alleged incident, because he was concerned that Mousaw's continued criticisms of him and repeated FOIL requests regarding the capital construction project could damage his reputation.  According to Bristol, plaintiff's criticisms and FOIL requests stemmed from the October 27, 2005, incident.

On February 17, 2006, Superintendent Bregg hired an outside firm, PSHR,[2] to conduct an investigation into Bristol's allegations against Mousaw.  PSHR conducted an investigation.  During the investigation, Bristol told the PSHR investigator that he had been told by Mousaw's sister that Mousaw had been a prostitute years before in New York City.  This was reflected in the investigator's notes but it was not included in the report.  Plaintiff did not cooperate in the investigation.

---

[2]  PSHR was dismissed as a defendant in this action on August 8, 2008.  Its investigator, Ronni Travers, also was dismissed as a defendant.

Shortly after the sexual harassment charge was lodged and the investigation was initiated, Superintendent Bregg informed the executive council of the teachers' association (comprised of five teachers) and the two school principals about the charge. He explained that an investigator may request an interview with staff or teachers, for which union representation could be requested.

In April or May 2006, Superintendent Bregg heard plaintiff on a local radio broadcast. She was identified as a member of the Board and as Deputy Budget Director for St. Lawrence County (the "County"). Superintendent Bregg telephoned Mousaw's supervisor, County Administrator Don Brining ("Brining") and told him about the radio broadcast, and that the school had received a sexual harassment complaint against plaintiff. Brining inquired if the complaint was made by a male or a female. According to Superintendent Bregg, he answered that the complaint was made by a male, and the conversation concluded.

As president of the Board, Knight scheduled Board meetings and committee meetings. Whenever he set a meeting for down for a Monday, plaintiff complained that she could not attend due to her work responsibilities with the County. After Mousaw publicly complained that Knight purposely scheduled meetings on Mondays to exclude her, Knight contacted Brining to inquire whether Mousaw was required to attend County meetings on Mondays. Brining responded that plaintiff need not attend the Monday County meetings unless specifically directed to do so. Knight is unsure of when this conversation with Brining occurred, but believed it was before the sexual harassment charges were made.

Similarly, Knight could not remember when he made a telephone call to Jane Powers ("Powers") regarding an article in the newspaper reporting comments Mousaw had

made about tax assessment issues at a town meeting.  Powers responded that she had met with plaintiff and corrected some of her misstatements.  Again, plaintiff contends that this contact was for a nefarious purpose regarding her employment with the County, but has adduced no evidence to support her contention.

Again, Knight could not recall when he had conversations with a County Legislator whose name he does not know ("legislator") and with County Legislator Tedra Cobb ("Cobb").  The legislator said something about having fun in Colton with all the publicity surrounding plaintiff.  Cobb, with whom Knight served on a board, made comments regarding issues that were reported in the newspaper.  Neither the legislator nor Cobb specifically mentioned the sexual harassment complaint.  As with his conversations with Brining and Powers, Mousaw alleges that these were done to undermine her position with the County, but has presented no evidence in support.

Knight also had contact with a few other County employees after Bristol's harassment charges were made.  He spoke with County Treasurer Bob McNeil ("McNeil"), who made several comments about what was happening with the Board, and all the articles in the newspaper.  They made small talk, and that was the end of the conversation, according to Knight.  Knight was approached by Julie Deegon ("Deegon") and Francine Peretta ("Peretta"), both department heads at the County, at a golf tournament.  According to Knight, they gave him their "condolences" about the publicity surrounding the issues the Board was dealing with regarding plaintiff.  Knight's recollection is that these conversations pertained to publicity about Mousaw's criticisms of the construction project, and not about the sexual harassment complaint against her.  According to plaintiff, Knight made these contacts

with County people in order to negatively effect her employment with the County.  However, Mousaw has set forth no evidence of this.

In May or June 2006, at a public session of the Board, plaintiff asserts that White accused her of stealing a school insurance binder that she had borrowed.  White denies that he accused her of stealing.  Rather, according to him, he asked Mousaw to return the insurance binder, which she had borrowed more than one year earlier, to which she responded, "Are you accusing me of stealing?"

PSHR provided its report of the investigation to Superintendent Bregg and Attorney Silver on June 14, 2006.  PSHR's report concluded that the sexual harassment complaint had a

> substantially greater possibility of being truthful than Ms. Mousaw's denials, to the extent that I assert with a high level of confidence that Ms. Mousaw did perform the actions submitted in the complaint, and did engage thereafter in actions that were intended to retaliate against Mr. Bristol for spurning her uninvited and unwelcome advance, and then for lodging the formal complaint against her.

Sch. Defts.' SMF Ex. W at 10 (Doc. No. 139-53).  The report was presented to the Board on July 11, 2006, in Executive (non-public) session.  After hearing the PSHR report, the Board voted to direct Attorney Silver to draft charges against plaintiff.  Attorney Silver did draft charges, and on July 25, 2006, he read the charges to the Board in public session.  According to Attorney Silver, his reading of the law, including Public Officers Law §§ 103 and 105, required reading the charges publicly, because if the Board voted to go forward it would require expenditure of funds.  The Board voted to proceed with removal charges against Mousaw, set a date for an administrative hearing, and appointed a hearing examiner.

At the next Board meeting, in early August 2006, the Board voted to approve the minutes from the July 25, 2006, meeting, over plaintiff's objections.  The minutes included the detailed charges against plaintiff, including the accusation that she grabbed Bristol's crotch.  Plaintiff requested that the Board hold off on posting the minutes on the school's website, as her attorney and Attorney Silver had agreed that the minutes would include a less graphic description of the charges.  Despite Mousaw's request, the Board posted the approved minutes on the school's website.

An administrative hearing was held on January 11, 2007, and continued on March 16, 2007.  In May 2007, plaintiff lost her re-election bid, and her tenure as a member of the Board ended as of June 30, 2007.  As a result, the administrative hearing pertaining to the sexual harassment charges against her was discontinued as moot.  Mousaw filed this action on September 24, 2007.

At some point plaintiff lost her job with the County, which she alleges was due to her refusal to drop this lawsuit.

## III. <u>STANDARDS</u>

### A. <u>Summary Judgment</u>

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986).  The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact.  Fed. R. Civ. P. 56; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986).  Facts, inferences therefrom, and ambiguities must be

viewed in a light most favorable to the nonmovant.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Id. at 586, 106 S. Ct. at 1356.  At that point, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56; Liberty Lobby, Inc., 477 U.S. at 250, 106 S. Ct. at 2511; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.  To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant.  Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

**B. First Amendment Retaliation**

A First Amendment retaliation claim by a public employee requires proof that the employee's speech pertained to "a matter of public concern;" that the employee was subjected to adverse employment action; and "a causal connection existed between the speech and the adverse employment action, 'so that it can be said that [her] speech was a motivating factor in the determination.'"  Calabro v. Nassau Univ. Med. Ctr., 424 F. Supp. 2d 465, 471 (E.D.N.Y. 2006) (quoting Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999)).  Thus, the "content, form, and context" of the speech at issue must be evaluated to determine whether it is of a public or private concern, taking into account the entire record.  Snyder v. Phelps, __ U.S. __, 131 S. Ct. 1207, 1216 (2011).

The United States "has chosen to protect even hurtful speech on public issues to ensure that public debate is not stifled."  Id. at 1220.  Therefore, "'speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to

special protection.'" Id. at 1215 (quoting Connick v. Myers, 461 U.S. 138, 145, 103 S. Ct. 1684, 1689 (1983) (internal quotation omitted)).

### C. Defamation, Libel, and Slander

A defamation cause of action, which includes libel and slander, requires proof that the allegedly defamatory statement about the plaintiff was false, was "published to a third party without authorization or privilege," the publisher was at the least negligent in making the publication, and the statement "either constitute[d] defamation per se or caused special damages." Id. at 371.  Further, a person making "a bona fide communication upon a subject in which he or she has an interest, or a legal, moral, or social duty to speak, and the communication is made to a person having a corresponding interest or duty" is entitled to a qualified privilege. Paskiewicz v. N.A.A.C.P., 216 A.D.2d 550, 551 (N.Y. App. Div. 2d Dep't 1995).  Once entitlement to a qualified privilege is established, plaintiff has the burden of proving more than negligence--she must prove "bad faith and motivation solely by malice." Id.

## IV.  DISCUSSION

### A.  First Cause of Action--First Amendment Violation

Mousaw alleges that all of the defendants denied her information she requested, and reacted in a hostile and threatening manner in response to her requests for information and to her public comments about a variety of issues in order to deter her from exercising her right to free speech.  She also alleges that defendants' actions would have deterred a person of ordinary firmness from exercising the right to free speech (that is, chilling the right to expression).

In the face of defendants' contentions[3] that her First Amendment claim is more accurately characterized as one for retaliation, plaintiff argues that the basis for her First Cause of Action is that as a public employee, her speech on a matter of public concern is protected.  She then goes on to cite Calabro, 424 F. Supp. 2d  at 471, for the elements of this cause of action, which are the elements of a claim for First Amendment retaliation by a public employee on matters of public concern.  See Pltf.'s Mem. at 16.  Accordingly, defendants' motion as to both the First and Second Causes of Action will be analyzed together as claims for retaliation against a public employee speaking out on matters of public concern.

## B.  Second Cause of  Action--First Amendment Retaliation

In order to prevail against defendants' summary judgment motion, plaintiff must set forth sufficient facts to establish that a genuine issue remains for trial; reliance upon allegations of the complaint and conclusory statements is insufficient.  See Calabro, 424 F. Supp. 2d at 470 (citing Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir. 1996)).

There is no dispute that Mousaw spoke out criticizing the capital construction project, including improper trusses, damage to the roof during a storm, and Bristol's use of  a school computer to access a personal internet dating site.  The capital construction project was a matter of public concern, and defendants do not argue to the contrary.

---

[3]  Defendants also argue that some of the complained-of conduct is outside the statute of limitations. However, plaintiff states that she relies upon conduct outside the limitations period for background only, not as a basis for her First Amendment claims.

However, the defendants do argue that plaintiff has no proof of an adverse employment action[4] by them.  Mousaw was employed by the County, not the School. Superintendent Bregg telephoned Brining, plaintiff's supervisor at the County, and told him that the School had received a sexual harassment complaint against her.  Further, at some prior time, Knight contacted Brining to obtain information about any possible employment-related scheduling conflict plaintiff might have with Board meetings scheduled on Monday nights.  Knight also contacted Powers about tax assessment issues raised by Mousaw. Knight had casual conversations with two County legislators and a few employees of the County, initiated by them, the topic of which was generally the publicity generated by plaintiff's public complaints (not the sexual harassment charge specifically).  Plaintiff has adduced no evidence that any of the contacts by these defendants with persons associated in some way with the County played any role whatsoever in her eventual termination by the County.

Mousaw has failed to establish that a genuine issue of fact remains for trial as to the second element of her First Amendment retaliation claim--adverse employment action by defendants.  Similarly, plaintiff has not adduced any facts tending to establish a causal connection between her complaints about the capital construction project and the termination of her employment by the County.

---

[4]  Mousaw complains that responding to her FOIL requests, failing to comply with her FOIL requests, responding to her in a hostile and derogatory manner, threatening her, in addition to contacting her employer, constituted retaliatory acts.  However, none of these acts could in any way be considered adverse employment action.  Similarly, these allegedly retaliatory acts cannot be considered the adverse employment action of removing Mousaw from the Board, when, in fact, she did not remain on the Board because she lost the election for another term.

Plaintiff also alleges that defendants' investigation of Bristol's sexual harassment complaint against her constituted retaliation.  According to plaintiff, defendants "engag[ed] in a deliberate campaign to humiliate and besmirch Plaintiff's character with the goal of removing her from the Board."  Pltf.'s Compl. ¶ 62.  State officials may not "oust an elected representative of the people" for engaging in speech on a matter of public concern, which is protected by the First Amendment.  See Velez v. Levy, 401 F.3d 75, 97-98 (2d Cir. 2005).  In Velez, plaintiff was removed from her elected position by the school chancellor pursuant to his authority under New York State Education Law, based upon an allegation of criminal conduct.  Id. at 82.  Here, none of the defendants had any authority to remove plaintiff from her elected position except at the conclusion of the administrative process regarding Bristol's sexual harassment complaint against her.  The administrative process was never concluded, and Mousaw was never removed from her elective position.  Rather, she lost her re-election bid and her elective term ended.  Thus, there is no genuine issue of material fact pertaining to plaintiff's term as a Board member concluding, and the school defendants are entitled to summary judgment dismissing the First and Second causes of action against them.

Although the Amended Complaint avers the First and Second Causes of Action as against "all defendants," only the "District defendants" are mentioned--Attorney Silver and Bristol are not.  Pltf.'s Am. Compl. ¶¶ 49-63.  Mousaw set forth no evidence that Attorney Silver and Bristol were responsible for an adverse employment action, or that any conduct by them had a causal connection to such adverse employment action.[5]  Thus, Attorney Silver

---

[5]  Bristol making a complaint of sexual harassment against plaintiff is not an adverse employment action.  Attorney Silver drafting and reading the sexual harassment charge against plaintiff, at the direction of the Board, also cannot be construed as an adverse employment action.

and Bristol are entitled to summary judgment dismissing the First and Second Causes of Action as against them.

Moreover, all defendants are entitled to qualified immunity.  Government actors are insulated from liability for alleged constitutional violations where "their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Snyder, 131 S. Ct. at 100 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)).  Bristol made a complaint of sexual harassment against plaintiff.  He could not reasonably have thought that making a complaint of sexual harassment would violate Mousaw's constitutional rights.  The school defendants agreed to pursue charges of sexual harassment against Mousaw when their investigator concluded that there appeared to be grounds for the complaint.  They could not reasonably have thought that this would violate plaintiff's constitutional rights in the circumstances presented.  Attorney Silver drafted the charges as directed by the Board, then, based upon his legal research, read the charges at a public Board meeting.  He also could not have believed that doing so would violate Mousaw's constitutional rights.  Thus, all defendants are entitled to qualified immunity and the First and Second Causes of Action must be dismissed.

## C. **Third Cause of Action--Defamation, Libel, and Slander (Pursuing Sexual Harassment Charge)**

In her Third Cause of Action, against Bristol, the Board members, Superintendent Bregg, White, and Attorney Silver, Mousaw alleges that the public reading, on July 25, 2006, of the Board's charges against her related to Bristol's allegations of sexual harassment, as well as the Board vote to pursue proceedings against her related to those charges, constituted defamation, libel, and slander.

### 1.  Statute of Limitations

Defendants argue that plaintiff's claims are barred by the one-year statute of limitations set in N.Y. C.P.L.R. 215(3) and/or N.Y. Educ. L. § 3813(2-b).  Mousaw argues that her claims are governed by the one year plus ninety day limitations period set forth in General Municipal Law § 50-i(1).

In general a claim for defamation, libel, and slander under New York State law is subject to a one-year limitations period.  Carlson v. Geneva City Sch. Dist., 679 F. Supp. 2d 355, 370 (W.D.N.Y. 2010) (citing McKenzie v. Dow Jones & Co., No. 08-4096-cv, 355 Fed. Appx. 533, 535 (2d Cir. Dec. 9, 2009) (unpublished) (citing N.Y. C.P.L.R. 215(3)).  However, for a tort claim brought "against a school district, board of education, or 'any teacher or member of the supervisory or administrative staff or employee,' the applicable limitations period is 'one year and ninety days after the happening of the event upon which the claim is based.'"  Id. (quoting N.Y. Educ. L. § 3813(2); N.Y. Gen. Mun. L. § 50-i(1)).  The Carlson Court explained that Education Law § 3813 provides for a one-year statute of limitations "except as provided in subdivision two of this section," which "directs that '[e]very such action shall be commenced pursuant to the provisions" of § 50-i of the General Municipal Law, which, in turn, sets a one year and ninety day statutory period.  Id. at 370 n.5 (internal quotations omitted).

In this action, Mousaw asserts torts claims against Bristol, the Board members, Superintendent Bregg, White, and Attorney Silver.  Plainly "board of education, or any teacher or member of the supervisory or administrative staff or employee," as set forth in § 3813 of the Education Law, encompasses these defendants.  Therefore, the applicable limitations period is one year and ninety days.  Plaintiff originally filed her Complaint on

September 24, 2007.  Thus, claims alleging defamation, libel, and slander which occurred on or after June 26, 2006, would be timely.  Plaintiff alleges the defamatory statements which provide the basis for the Third Cause of Action were made on July 25, 2006.  Accordingly, Third Cause of Action is not time-barred.

### 2.  Merits of Defamation, Libel, and Slander Claims

At the July 25, 2006, Board meeting, Attorney Silver read the charges contained in Bristol's February 2006 sexual harassment complaint, stating that these were allegations Bristol made against Mousaw.  Mousaw contends Attorney Silver repeating the allegations was defamatory.  The basis for plaintiff's contention is that Bristol's charges of sexual harassment were false.  However, it is the statements of Attorney Silver, and the other school defendants to the extent that they repeated the allegations of Bristol's charge, rather than Bristol's allegations, which plaintiff must establish were false in order to be actionable.  Mousaw cannot prove the statements were false because the statements made by Attorney Silver (and the other school defendants) were true in that Bristol did make those sexual harassment allegations.  Thus, plaintiff's defamation claim fails.

Further, Mousaw admits that Bristol did not make any statement at the July 25, 2006, Board meeting.[6]  Therefore, the Third Cause of Action as against him must be dismissed.

Plaintiff also argues that Angleberger and Andrews defamed her.  Plaintiff contends that their comments toward her were demeaning:  Angleberger referring to plaintiff as "Queen of the Board" and Andrews making a comment to plaintiff's brother in a tavern that

---

[6]  Bristol made the sexual harassment allegations against Mousaw in his complaint in February 2006.  Any defamation claim against him accrued in February 2006, clearly outside the limitations period.

plaintiff tried to sleep with her husband when she was fifteen.  As to Angelberger's

derogatory comments, just as Mousaw is entitled to freely express her ideas critical of the

Board, so too was Angelberger entitled to freely express his criticism of plaintiff.  See Snyder,

131 S. Ct. at 1215, 1219 (noting that even insulting speech is protected; protected speech

provides a defense to tort liability).  As for Andrew's comment, plaintiff has failed to produce

any evidence specifying a time frame when it was made.  See Dillon v. City of New York, 261

A.D.2d 34, 38 (N.Y. App. Div. 1st Dep't 1999) (time, place, and manner must be specified).

In addition, she has not asserted that it was false, and has not adduced evidence of

negligence, malice, or special damages.

There are no other statements by these or other defendants specified in Mousaw's

Amended Complaint.  Therefore, these defendants are entitled to dismissal of any other

defamation claims as against them.  See id. (noting that N.Y. C.P.L.R. 3016 requires the

alleged defamatory statements to be set forth in the complaint; also required are allegations

of to whom they were made as well as the time, place, and manner of such statements).

**D.  Fourth Cause of Action--Defamation, Libel, and Slander (Bristol Telling**
**Investigator Plaintiff was a Prostitute)**

In her Fourth Cause of Action Mousaw alleges that Bristol committed defamation

when he told the person investigating his sexual harassment charge against plaintiff that she

had been a prostitute in New York City.  The statute of limitations for defamation is one year.[7]

N.Y. C.P.L.R.  215(3).  (McKinney's Supp. 2011).  As noted above, plaintiff filed her original

complaint on September 24, 2007.  Thus, any statements made prior to September 24,

---

[7]  Unless the limitations period is otherwise specified, such as in Education Law § 3813.

2006, are not actionable.  The alleged defamatory statement by Bristol was made during the investigation, sometime before the investigatory report was provided to the Superintendent Bregg and Attorney Silver on June 14, 2006.  Even if the one year plus ninety days limitations period of N.Y. Educ. L. § 3813 applies, as plaintiff argues, the alleged statement was made prior to June 26, 2006.  Thus, any cause of action based upon this statement is barred by the statute of limitations.  The <u>Fourth</u> Cause of Action must be dismissed.

### E.  <u>Fifth Cause of Action--Defamation, Libel, and Slander (White Accusing Plaintiff of Stealing an Insurance Binder)</u>

In her <u>Fifth</u> Cause of Action plaintiff alleges that White accused her, during a public Board meeting, of stealing a school insurance binder.  According to plaintiff, a question of fact exists because White denies using the word "steal."  According to White, after repeatedly requesting that plaintiff return the insurance binder, he finally asked her to return it at a public Board meeting and she retorted:  "Are you accusing me of stealing?" While that fact may be in question, it is not material.  Mousaw admits that she was in possession of the school's insurance binder, and had been for over one year.  She also admits that she returned the insurance binder to the school within a few days after White requested it back.  Viewing the evidence most favorably to Mousaw, White did accuse her of stealing the binder.  However, given her admission that she returned the insurance binder within a few days, she has not established that White's statement was false.  Moreover, the evidence only established that the statement was made sometime in 2006, not on a specific day as is required.  See <u>Dillon</u>, 261 A.D.2d at 38.

Additionally, White's statement was privileged.  The subject of the school's insurance binder was one in which White, as school treasurer, had an interest.  His request

to return the insurance binder was made to Mousaw, a person with a similar interest as a member of the Board.  Therefore, he was entitled to a qualified privilege.  Plaintiff adduced no facts to show that White's request was made in bad faith motivated by malice.  See Paskiewicz, 216 A.D.2d at 551.

### F.  Sixth Cause of Action--Defamation, Libel, and Slander (Bristol Accusing Plaintiff of Breaking and Entering into the Construction Trailer)

In her Sixth Cause of Action Mousaw alleges that Bristol defamed her by telling the investigator that he had mentioned her name when asked who might have broken into the construction trailer.  As with his statement that plaintiff had been a prostitute, this statement was made during the course of the investigation of his sexual harassment complaint against her.  Necessarily this must have been prior to the investigative report being presented to Superintendent Bregg and Attorney Silver on June 14, 2006.  As with the Fourth Cause of Action, the Sixth Cause of Action is barred by the statute of limitations, whether a one-year (events prior to September 24, 2006, not actionable) or one-year-plus-ninety-days (events prior to June 26, 2006, not actionable) limitations period applies.  Thus, the Sixth Cause of Action must be dismissed.

## V.  CONCLUSION

Mousaw's First Cause of Action sounds in retaliation for her speech criticizing Board actions pertaining to the capital construction project.  Therefore, it was analyzed with the Second Cause of Action alleging the same retaliation.  Plaintiff failed to adduce facts to create a genuine issue for trial that defendants caused any adverse employment action against her or that their actions resulted in termination of her employment by the County.  Moreover, plaintiff's elected position as a member of the Board ended because she lost the

election, not due to retaliation by defendants.  Further, plaintiff put forth no evidence that Attorney Silver and Bristol were responsible for adverse employment action against her or that their actions caused any adverse employment action.  Additionally, the defendants are entitled to qualified immunity.

Mousaw's Third Cause of Action, against Bristol and the school defendants, is not barred by the statute of limitations.  However, she failed to establish evidence of the falsity of the alleged statements she claims were defamatory.  Further, Angleberger was entitled to freedom of speech (criticizing plaintiff), a defense to a defamation claim.  Plaintiff failed to set forth evidence of the time, place, and manner of Andrew's allegedly defamatory comments, thus any claim as to those comments must be dismissed.

Plaintiff's Fourth Cause of Action, against Bristol, is barred by the statute of limitations.  Her Fifth Cause of Action, against White, must be dismissed as there is no evidence that his statement was false and she failed to specify when it was made.  Further, White is entitled to a qualified privilege, which plaintiff failed to overcome by establishing bad faith and motivation by malice.  Plaintiff's Sixth Cause of Action, against Bristol, is barred by the statute of limitations.

Accordingly, it is

ORDERED that

1.  Defendants' motions for summary judgment are GRANTED; and

2.  The complaint is DISMISSED in its entirety.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated: May 3, 2011
       Utica, New York.